**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MELINA BERNARDINO, individually and on
behalf of other similarly situated persons,

Plaintiff,

v.

BARNES & NOBLE BOOKSELLERS, INC.,

Defendant.

---

Case No. 1:17-cv-04570-LAK-KHP

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO**
**JUDGE PARKER'S REPORT AND RECOMMENDATION**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
(212) 474-1000

*Attorneys for Defendant Barnes & Noble*
*Booksellers, Inc.*

December 18, 2017

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

STANDARD OF REVIEW ....................................................................................................... 5

ARGUMENT ............................................................................................................................ 6

I.      JUDGE PARKER CORRECTLY FOUND BASED ON BINDING
SECOND CIRCUIT LAW AND THE BURGOS DECLARATION THAT
PLAINTIFF AGREED TO ARBITRATE HER CLAIMS. ................................ 6

      A.      Judge Parker Correctly Applied Second Circuit Law in Finding
that Plaintiff Agreed to the Arbitration Clause. ........................................ 6

      B.      Judge Parker Properly Rejected Plaintiff's Evidentiary and
Timeliness Objections to the Burgos Declaration. ................................... 10

II.      JUDGE PARKER CORRECTLY CONCLUDED THAT THE
ARBITRATION CLAUSE IS NOT UNCONSCIONABLE. ............................ 17

      A.      The Arbitration Agreement Is Not Substantively Unconscionable. ......... 17

      B.      The Arbitration Agreement Is Not Procedurally Unconscionable............ 19

CONCLUSION........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albany Sav. Bank, FSB v. Halpin*,
    117 F.3d 669 (2d Cir. 1997)..................................................................................10

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228, 133 S. Ct. 2304 (2014).............................................................17, 18

*Aurora Loan Servs. Inc. v. Posner, Posner & Assocs., P.C.*,
    513 F. Supp. 2d 18 (S.D.N.Y. 2007) ..................................................................16

*Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*,
    215 F.3d 219 (2d Cir. 2000).................................................................................15

*Boice v. M+W U.S., Inc.*,
    130 F. Supp. 3d 677 (N.D.N.Y. 2015) ..................................................................5

*Brown Pub. Co. v. Brown*,
    No. 15-mc-0531, 2017 WL 455418 (E.D.N.Y. Feb. 1, 2017) ..............................15

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 (N.D. Cal. 2017) ...........................................................12, 13

*In re Cotton Yarn Antitrust Litig.*,
    505 F.3d 274 (4th Cir. 2007) ..........................................................................17, 18

*Cumming v. Indep. Health Ass'n, Inc.*,
    No. 13-cv-969, 2014 WL 3533460 (W.D.N.Y. July 16, 2014) ..............................5

*Dixon v. NBCUniversal Media, LLC*,
    947 F. Supp. 2d 390 (S.D.N.Y. 2013)..................................................................15

*Docusign, Inc. v. Sertifi, Inc.*,
    468 F. Supp. 2d 1305 (W.D. Wash. 2006)............................................................16

*Domino Media, Inc. v. Kranis*,
    9 F. Supp. 2d 374 (S.D.N.Y. 1998) .....................................................................16

*Eichenberger v. ESPN, Inc.*,
    2017 WL 5762817, -- F.3d -- (9th Cir. Nov. 29, 2017).........................................18

*Fink v. Time Warner Cable*,
    810 F. Supp. 2d 633 (S.D.N.Y. 2011)..................................................................14

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20, 111 S. Ct. 1647 (1991) ...................................................................18

*Hook v. Intelius, Inc.*,
    No. 10-cv-239, 2011 WL 1196305 (M.D. Ga. Mar. 28, 2011) ...............................12

*Hubbard v. Kelley*,
    752 F. Supp. 2d 311 (W.D.N.Y. 2009) ...................................................................6

*In re Hulu Privacy Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ..........................................................17, 18

*Ingalls v. Spotify USA, Inc.*,
    No. 16-cv-3533, 2016 WL 6679561 (N.D. Cal. Nov. 16, 2016) ...........................20

*Laroque v. Domino's Pizza, LLC*,
    557 F. Supp. 2d 346 (E.D.N.Y. 2008) .........................................................14, 15

*Lebowitz v. City of N.Y.*,
    No. 12-cv-8982, 2014 WL 772349 (S.D.N.Y. Feb. 25, 2014) ..............................13

*Manigaulte v. C.W. Post of Long Island Univ.*,
    659 F. Supp. 2d 367 (E.D.N.Y. 2009) ...................................................................5

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ............................................................................ *passim*

*MPD Accessories B.V. v. Urban Outfitters, Inc.*,
    No. 12-cv-6501, 2013 WL 5761421 (S.D.N.Y. Oct. 24, 2013) .............................16

*Pagan v. Abbott Labs., Inc.*,
    287 F.R.D. 139 (E.D.N.Y. 2012) .........................................................................14

*Playboy Enters., Inc. v. Dumas*,
    960 F. Supp. 710 (S.D.N.Y. 1997) .......................................................................16

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
    No. 15-cv-3526, 2016 WL 6083956 (S.D.N.Y. Oct. 17, 2016) .......................15, 16

*Promega Corp. v. Life Techs. Corp.*,
    674 F.3d 1352 (Fed. Cir. 2012) ............................................................................18

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010) ..........................................................................19, 20

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) ..................................................................................9

*Scone Invs., L.P. v. Am. Third Market Corp.*,
    992 F. Supp. 378 (S.D.N.Y. 1998) ........................................................................16

*Selden v. Airbnb*,
    No. 16-cv-933, 2016 WL 6476934 (D.D.C. Nov. 1, 2016) ................................11, 12

*Sutherland v. Ernst & Young LLP*,
    726 F.3d 290 (2d Cir. 2013)..............................................................................12, 17

*Tetra Techs., Inc. v. Harter*,
    823 F. Supp. 1116 (S.D.N.Y. 1993).......................................................................16

*Tishcon Corp. v. Soundview Commc'ns, Inc.*,
    No. 04-cv-524, 2006 U.S. Dist. LEXIS 97309 (Feb. 14, 2006) ...........................16

*TufAmerica, Inc. v. Codigo Music LLC*,
    162 F. Supp. 3d 295 (S.D.N.Y. 2016)....................................................................13

*Underwood v. Chapman Bell Road Imports, LLC*,
    No. 12-cv-1835, 2013 WL 1289528 (D. Ariz. Mar. 15, 2013).............................19

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
    No. 07-cv-2352, 2007 WL 1098714 (S.D.N.Y. Apr. 12, 2007) ...........................16

*Zhao v. State Univ. of N.Y.*,
    No. 04-cv-210, 2011 WL 3610717 (E.D.N.Y. Aug. 15, 2011) ..............5, 6, 16, 17

*Zouras v. Goldman Sachs Grp., Inc.*,
    No. 02-cv-9249, 2003 WL 21997745 (S.D.N.Y. Aug. 22, 2003)............................5

## Statutes & Rules

28 U.S.C. § 636(b)(1)(A)...........................................................................................5

Fed. R. Civ. P. Rule 6(b)......................................................................................14, 15

Fed. R. Civ. P. Rule 72 ...............................................................................................5

Fed. R. Evid. 803(6)...................................................................................................13

Fed. R. Evid. 1001 ....................................................................................................13

Fed. R. Evid. 1003 ....................................................................................................13

Defendant Barnes & Noble Booksellers, Inc. ("Barnes & Noble", "B&N" or "Defendant") respectfully submits this Response to Plaintiff's Objections [Dkt. #79] (the "Objections") to United States Magistrate Judge Katharine H. Parker's Report and Recommendation [Dkt. #78] (the "Report"), which recommended that this Court grant Defendant's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration [Dkt. #39] (the "Motion").

## PRELIMINARY STATEMENT

Following extensive briefing and oral argument, Judge Parker issued her thorough and well-reasoned 29-page Report on November 20, 2017, recommending that the Court compel Plaintiff to arbitration.  Notably, Plaintiff has not objected to Judge Parker's conclusion that the arbitration clause encompasses Plaintiff's claims.  (Report at 4.)  Instead, Plaintiff has lodged meritless Objections that almost exclusively rehash the very same arguments Judge Parker considered and appropriately rejected, and that add two other meritless arguments that Plaintiff never made before and that therefore have been waived.  The Objections should be overruled, and the Motion should be granted.

*First*, Judge Parker correctly concluded that, by clicking the "Submit Order" button at the end of her purchase, Plaintiff agreed to arbitrate her claims, faithfully applying binding, on-point Second Circuit law concerning constructive notice, and rightly considering the unmet evidence that Barnes & Noble presented.  (Section I.)  *Second*, Judge Parker correctly concluded that the arbitration clause to which Plaintiff agreed was neither substantively nor procedurally unconscionable, after accurately observing that it must be *both* in order not to be enforced.  (Section II.)

## STATEMENT OF FACTS

Plaintiff filed suit on June 16, asserting claims arising from Plaintiff's purchase on February 3 of a DVD from Barnes & Noble's mobile website (https://m.barnesandnoble.com) (the "Website"). Shortly thereafter, Barnes & Noble informed Plaintiff that her claims were subject to arbitration pursuant to the Website's Terms of Use (the "Terms of Use" or "TOU"), to which Plaintiff agreed when she purchased her DVD. Plaintiff refused to arbitrate.

Barnes & Noble filed its Motion on July 31, arguing (among other things) that Plaintiff agreed to the Terms of Use when she made her purchase [Dkt. #40]. In support of its Motion, Barnes & Noble attached the Declaration of Kacey Sharrett [Dkt. #41] (the "Sharrett Declaration"), with accompanying exhibits that included certain screenshots taken of the Website on July 27. Plaintiff moved to strike the Sharrett Declaration on August 17, attaching to that motion a screenshot captured by Plaintiff's counsel on May 30 of the Website's "Sign In or Checkout As Guest" page [Dkt. #52-1], which looked different in certain respects than the analogous screenshot attached (at Exhibit F) to the Sharrett Declaration.[1]

On September 5, Plaintiff filed her opposition to Defendant's Motion, arguing that she did not agree to arbitrate her claims because, at the time of her purchase on February 3, (1) she was not presented—"without scrolling"—with any language informing her that she was agreeing to the Terms of Use (Pl.'s Opp'n [Dkt. #60] at 7-8); and (2) the language that informed customers that they were agreeing to the Terms of Use applied only to those who had "sign[ed] in" to the Website, and not those (like Plaintiff) who had checked out as a "guest" (*id.* at 9-11). Plaintiff again attached a screenshot of the "Sign In or Checkout As Guest" page of the

---

[1] Briefing was completed on Plaintiff's motion to strike on September 7 [Dkt. #63]. In addition, by Order dated August 28 [Dkt. #58], this Court denied Plaintiff's earlier motion—for a preliminary injunction—following briefing, argument and a report and recommendation by Judge Parker [Dkt. ##20-24, 34, 38, 45, 47].

Website—this time from August 18 [Dkt. #62-1]—which again looked different than Exhibit F
to the Sharrett Declaration.  And, in a declaration submitted with Plaintiff's opposition papers,
Plaintiff claimed for the first time that, "to the best of [her] knowledge", she held her phone "in
landscape orientation" "when making this purchase" [Dkt. #61 ¶ 6].

        Plaintiff's screenshots in opposition to Defendant's Motion and in support of her
own motion to strike prompted Barnes & Noble to conduct further investigation.  Based on that
investigation, Barnes & Noble concluded that the "Sign In or Checkout As Guest" page that was
in effect on February 3 did not match precisely the screenshots attached to either the Sharrett
Declaration or Plaintiff's papers.  Rather, on February 3, Plaintiff (and any other customer who
purchased a DVD as a guest on the Website) was specifically informed *later* in the checkout
process—and without the need for any scrolling—that any purchase was conditioned on agreeing
to the Terms of Use.  The supporting evidence was set out in the Declaration of Antonio Burgos
[Dkt. #66] (the "Burgos Declaration"), which Barnes & Noble submitted with its reply papers on
September 26.  As the Burgos Declaration showed, on February 3, at the top of the final page of
Plaintiff's checkout process, Plaintiff was presented with a button labeled "Submit Order",
directly under which (and without scrolling) appeared the statement "By making this purchase
you are agreeing to our Terms of Use", with "Terms of Use" in a blue font that hyperlinked to
that document.  (Burgos Decl., Exs. 4-5.)  Plaintiff could not have made her purchase without
clicking this "Submit Order" button.  (*Id.* ¶¶ 9, 15.)

        Given the regrettable confusion that the Sharrett Declaration might have caused—
which stemmed from the fact that, between Plaintiff's purchase on February 3 and the Sharrett
Declaration on July 31, the Website had transitioned from being hosted by Barnes & Noble itself
to being hosted by a third-party vendor (*id.* ¶ 5)—Defendant stated in its reply brief

accompanying the Burgos Declaration that "Defendant would not oppose a request by Plaintiff to serve a sur-reply" [Dkt. #65 at 4 n.5].  That way, Plaintiff would have an opportunity to respond to the new evidence that its own evidence (and arguments) had prompted.  The next day (September 27), Plaintiff wrote to the Court, seeking guidance as to whether she should (1) move "to strike the new evidence" Barnes & Noble had submitted on reply or (2) move "for leave to file a surreply" to address "as a legal matter" whether Barnes & Noble had made "a *prima facie* case for arbitration".  (Decl. of Stefan H. Atkinson, submitted contemporaneously herewith ("Atkinson Decl."), Ex. 1.)  Defendant responded, stating that the Burgos Declaration was submitted "in direct response to Plaintiff's evidence and arguments", and reiterating that "we would not object to . . . a sur-reply".  (*Id.*, Ex. 2; *see also id.*, Ex. 4.)  The following week, Plaintiff chose the latter course—filing an "Unopposed Motion for Leave to File Sur-Reply to Address New Evidence" [Dkt. #70], and submitting a proposed order that would grant Plaintiff the right to file such a brief "to address the new evidence submitted by Defendant" (Atkinson Decl., Ex. 3.)  The Court entered the proposed order on October 9 [Dkt. #71], and Plaintiff filed her sur-reply on October 19, addressing on the merits the evidence Barnes & Noble had submitted on reply (Pl.'s Sur-Reply [Dkt. #74]).

   The parties appeared before Judge Parker for more than three hours of oral argument on November 1—during which Defendant agreed to withdraw those portions of the Sharrett Declaration that Plaintiff had sought to strike.  (Hr'g Tr., dated Nov. 1, 2017 (Atkinson Decl., Ex. 5) ("Tr."), at 77:5-17 (Defendant's Counsel:  "[W]e think Your Honor should continue to use [the Terms of Use attached as Exhibit I to the Sharrett Declaration], but beyond that, we do not oppose the motion to strike.").)  On November 20, Judge Parker issued her Report, recommending that the Court grant Defendant's Motion (and deny Plaintiff's motion to strike as

moot).  (Report at 29.)

## STANDARD OF REVIEW

Plaintiff is mistaken in her assertion that this Court should review *de novo*

Judge Parker's well-reasoned findings of fact and conclusions of law.  (Objs. at 1-2.)  *De novo*

review is not appropriate because Barnes & Noble's Motion—to compel arbitration and to stay

proceedings pending arbitration—is a non-dispositive motion.  *See, e.g.*, *Cumming v. Indep.*

*Health Ass'n, Inc.*, No. 13-cv-969, 2014 WL 3533460, at *1-2 (W.D.N.Y. July 16, 2014);

*Zouras v. Goldman Sachs Grp., Inc.*, No. 02-cv-9249, 2003 WL 21997745, at *1 (S.D.N.Y.

Aug. 22, 2003).  As a result, Rule 72(a) of the Federal Rules of Civil Procedure (rather than

Rule 72(b), regarding dispositive motions) governs this Court's review of the Report, such that

the Court "must consider timely objections and modify or set aside any part of the [Report] that

is *clearly erroneous* or is *contrary to law*".  Fed. R. Civ. P. 72(a) (emphases added); *see also*

28 U.S.C. § 636(b)(1)(A).  This is true even though Judge Parker issued the Report under

Rule 72(b).  *See Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 685-86 (N.D.N.Y. 2015)

(reviewing Rule 72(b) report and recommendation for clear error because, among other reasons,

the underlying motion was "non-dispositive in nature").

Even if the Motion were dispositive, this Court still would not need to conduct

*de novo* review throughout.  That is because, under Rule 72(b), "[w]hen a party makes only

conclusory or general objections, or simply reiterates his original arguments, the Court reviews

the Report and Recommendation only for *clear error*."  *Manigaulte v. C.W. Post of Long Island*

*Univ.*, 659 F. Supp. 2d 367, 372 (E.D.N.Y. 2009) (emphasis added).  And courts refuse to

consider arguments at the objections phase that could have been, but were not, presented to the

magistrate judge in the first instance.  *Zhao v. State Univ. of N.Y.*, No. 04-cv-210, 2011 WL

3610717, at *1 (E.D.N.Y. Aug. 15, 2011); *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 312-13 (W.D.N.Y. 2009).[2]

To be clear, however, the Court should adopt Judge Parker's Report and grant the Motion regardless of the standard of review, as even *de novo* review compels arbitration.

## ARGUMENT

I. **JUDGE PARKER CORRECTLY FOUND BASED ON BINDING SECOND CIRCUIT LAW AND THE BURGOS DECLARATION THAT PLAINTIFF AGREED TO ARBITRATE HER CLAIMS.**

A. Judge Parker Correctly Applied Second Circuit Law in Finding that Plaintiff Agreed to the Arbitration Clause.

This August, in *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017), the Second Circuit vacated the denial of a motion to compel arbitration on the basis that the plaintiff there (an Uber rider) had "reasonably conspicuous notice" of, and had "unambiguously manifested his assent" to, the arbitration clause in Uber's terms of service by clicking the "Register" button on Uber's mobile app, under which appeared language informing him that, by so clicking, he was agreeing to those terms. *Id.* at 76, 79, 81. As shown in Appendix A to the Report—which lines up the screen the plaintiff saw in *Meyer* with the screen Ms. Bernardino saw here—there is no meaningful distinction between the evidence that compelled arbitration in *Meyer* and the evidence that compels arbitration here. *Meyer* mandates a finding of assent.

---

[2] A large number of Plaintiff's Objections are identical to those raised before Judge Parker, and thus are subject to review only for clear error. Plaintiff's arguments about scrolling and supposedly ambiguous contract terms are reiterations of the arguments made in her opposition briefing. (*Compare* Objs. at 9-12, *with* Pl.'s Opp'n at 7-8, and Pl.'s Sur-Reply at 5-6; Section I.A.) Plaintiff's evidentiary and timeliness objections are also mostly recycled. (*Compare* Objs. at 13-14, *with* Pl.'s Sur-Reply at 7-8; Section I.B.i; *compare* Objs. at 5-8, *with* Pl.'s Sur-Reply at 9-10; Section I.B.ii.) And Plaintiff's unconscionability arguments are largely copied from her opposition brief. (*Compare* Objs. at 14-19, *with* Pl.'s Opp'n at 11-19; Section II.) Furthermore, this is the first time that Plaintiff ever has argued that she was prejudiced by the timing of the Burgos Declaration (Section I.B.ii) or that the arbitration clause should not be enforced under the "effective vindication" exception (Section II.A), which means both arguments have been waived.

In *Meyer*, the Second Circuit analyzed five factors—all of which apply with equal force in the present matter:  (1) the relevant screen was "uncluttered"; (2) the language informing plaintiff of his agreement and the link to the terms of service "appear[ed] directly below" the "Register" button; (3) the button, warning and link were all "visible at once, and the user [did] not need to scroll beyond what [wa]s immediately visible to find notice" of the terms of service; (4) the link to the terms of service was in a blue font that "contrast[ed] with the bright white background"; and (5) notice of the terms of service and agreement thereto was provided at the same time that the user clicked the "Register" button, "thereby connecting the contractual terms to the services to which they apply".  *Id.* at 78.  Judge Parker agreed:

> "Like the screen or page on the Uber app that was examined in *Meyer*, the B&N 'Submit Order' page was uncluttered.  Text alerting the user to the existence of B&N's TOU appeared directly below the 'Submit Order' button and provided a hyperlink to the TOU.  No scrolling was needed to access the hyperlink to the TOU.  The language alerting the user to the TOU was clear and obvious by virtue of its black sans-serif font contrasted against a white background, with blue font indicating the hyperlink to the TOU, also contrasted against a white background.  The language of the text was a clear prompt to users to read the TOU before submitting their purchase order insofar as it stated '[b]y making this purchase you are agreeing to our Terms of Use and Privacy Policy.'  The notice about the TOU also was temporally connected to an action by the user—the submission of a purchase order." (Report at 19 (citing Report, App'x A).)[3]

Plaintiff has no answer to *Meyer*.  So instead, she nibbles around the edges, claiming (as she did before Judge Parker) that *one* of the five *Meyer* factors—the lack of scrolling—*may* be in question here.  But Plaintiff is mistaken.  As an initial matter, Plaintiff concedes that the image of the "Submit Order" page that Mr. Burgos took in landscape

---

[3] In fact, Judge Parker listed a number of reasons why Barnes & Noble's case for constructive notice and assent was even *stronger* than Uber's in *Meyer*—including that, "in the case of B&N's website, the notice language appeared directly under the 'Submit Order' button, whereas on the Uber app reviewed in *Meyer*, other text and buttons appeared between the 'Register' button and the reference to Uber's terms of service".  (*Id.* at 19-20.)

7

orientation from his iPhone 7 "shows constructive notice language visible *without* scrolling". (Objs. at 10 (emphasis added).)  Indeed, it does.  (Report, App'x A; Burgos Decl., Ex. 4.)  But Plaintiff then wonders whether this same image *might not* have displayed that language without scrolling if the image had included the iPhone "tool bars" that appear in the screenshots Mr. Burgos took in portrait orientation.  (Objs. at 10-11.)  There are at least three problems with this argument.

  *First*, the need to scroll was just *one* of *five* factors analyzed in *Meyer*—and there is no indication from that decision or any other that scrolling alone is dispositive.  Indeed, despite now arguing that any need to scroll would be "fatal to the Motion" (*id.* at 10), Plaintiff's counsel correctly acknowledged before Judge Parker at oral argument that scrolling is *not* dispositive, but rather is "just one of the factors the courts look at" (Tr. at 36:25-37:4; *see id.* at 52:16-20).  Plaintiff challenges no other *Meyer* factor.

  *Second*, even if scrolling were dispositive—which it is not—Judge Parker relied on Mr. Burgos's sworn (and unchallenged) statement that the language "101 NOOK Books Under $2.99"[4] and the surrounding space shown in Exhibit 4 to his Declaration would not have appeared on the screen Plaintiff saw, but instead "would have collapsed, and the rest of the page would have shifted even further up", "such that the 'Submit Order' button and language directly beneath it would have appeared *even further up on the screen, and still without scrolling*". (Burgos Decl. ¶ 16 (emphasis added); *see* Report at 17.)  In other words, even *with* the tool bars (which are narrower than the "101 NOOK Books" text and adjacent area (*see* Burgos Decl., Exs. 4, 5)), the notice language would have been visible to Plaintiff *without scrolling*.  Plaintiff

---

[4] As explained in Mr. Burgos's sworn declaration, this text is a placeholder appearing "only in the quality assurance server" indicating that a "banner advertisement could be inserted in that space", but that "[a]s a matter of practice and policy . . . Barnes & Noble did not insert any such banner advertisements (or other language)" in that space.  (Burgos Decl. ¶ 16; *see also* Report at 10 n.2.)

has presented no evidence at all to the contrary.

   *Third*, Judge Parker—after reviewing an iPhone in court during oral argument in response to Plaintiff's speculative claim about tool bars (*see* Tr. at 83:13-86:22)—found that the tool bars "appear and disappear depending on whether the phone's orientation is moved by the user", and concluded that "there is no basis for questioning the truthfulness of Burgos' representation that Exhibit 4 was in fact the image he captured on his iPhone 7 when recreating what the checkout page looked like in landscape view to users on February 3, 2017" (Report at 17). Plaintiff offers no reason why this finding should be rejected; indeed, in all her many filings with the Court in this case, Plaintiff has *never* submitted an image of *any* page of the Website in landscape orientation.[5]

   Plaintiff's other half-hearted argument—that the notice language is too ambiguous to be enforceable because "signed in" customers agreed to the Terms of Use at one point in the checkout process, whereas "guests" agreed to the Terms of Use at another point (Objs. at 11-12)—is as specious as it was before Judge Parker. In all her briefing, Plaintiff has never cited any case suggesting any ambiguity in any factual scenario that in any way resembles ours. That is because there is no ambiguity here. On February 3, customers who signed in to their accounts were told at the "Sign In or Continue as Guest" page that "By *signing in* you are agreeing to our Terms of Use". (Burgos Decl., Ex. 11 (emphasis added).) But, by her own admission, Plaintiff *did not sign in*; she instead checked out as a guest [Dkt. #61 ¶ 7]. Customers

---

  [5] Furthermore, Plaintiff, who has never challenged the image Mr. Burgos provided of the "Submit Order" page in *portrait* orientation—which, with tool bars, shows the button and notice language without scrolling (Burgos Decl., Ex. 5)—has never explained why the landscape view (as opposed to the portrait view that most users employ) is what matters. According to *Meyer*, "precedent and basic principles of contract law instruct that we consider the perspective of a *reasonably prudent smartphone user*", not the plaintiff herself. 868 F.3d at 77 (emphasis added) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 124 (2d Cir. 2012)). Plaintiff has presented no evidence that her purported decision to hold her phone sideways [Dkt. #61 ¶ 6] was reasonable. Furthermore, "a reasonably prudent smartphone user" would know that, when you hold the phone sideways, otherwise visible text might be lost, such that it is reasonable to scroll down.

(like Plaintiff) who checked out as a guest were told at the later "Submit Order" page that "By making this purchase you are agreeing to our Terms of Use".  (Burgos Decl. ¶¶ 7-10, Exs. 4, 5.) Plaintiff's extraordinary request that this Court resolve some nonexistent contractual ambiguity in her favor should be rejected.  *See, e.g.*, *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997) ("New York applies this rule only as a matter of last resort after all aids to construction have been employed without satisfactory result." (internal quotation marks omitted)).

      B.    <u>Judge Parker Properly Rejected Plaintiff's Evidentiary and Timeliness Objections to the Burgos Declaration.</u>

          i.    *Plaintiff's Evidentiary Objections Fail.*

Plaintiff makes two arguments as to why the Burgos Declaration should be disregarded as inadmissible.  Each of these arguments was already rejected by Judge Parker.

*First*, Plaintiff suggests that the Burgos Declaration is insufficiently reliable to be admissible in the context of Barnes & Noble's Motion, arguing that the Burgos Declaration "is silent on how [Mr. Burgos] knows that the images rendered accurately, except his own memory". (Objs. at 13.)  That is false.  Mr. Burgos testified in great detail as to how he undertook his investigation to determine exactly what the screen would have looked like for users on February 3—and as to how he documented the findings of that investigation—including:

- Reviewing "all JIRA tickets and supporting documentation that related in any way to the 'Submit Order' page of the Website" (Burgos Decl. ¶ 6);

- Reviewing in particular the November 2015 ticket requesting that the constructive notice language be added to the "Submit Order" page (*id.* ¶ 7);

- Confirming based on that ticket and others that this change was implemented in December 2015 and remained in place until the Website began to be hosted by a third-party vendor after Plaintiff's purchase (*id.* ¶¶ 7, 10);

- Confirming that "Barnes & Noble continues to maintain the quality assurance server for

the version of the Website that existed on February 3, 2017" (*id.* ¶ 12);

- Testifying based on his many years of experience at Barnes & Noble that "quality assurance . . . involves reviewing proposed changes to a website . . . and ensuring that the changes have been implemented correctly before they . . . become visible to the public" (*id.* ¶ 3);

- Confirming that the quality assurance server that is still in place at Barnes & Noble "makes it possible to re-create . . . the version of the checkout pages of the Website that Plaintiff would have seen when she completed her purchase on February 3, 2017" (*id.* ¶ 12); and

- Personally accessing that server "to capture images of what the 'Submit Order' page of the Website would have looked like, without scrolling, on an iPhone 7 for Plaintiff on February 3, 2017", in both landscape and portrait orientation (*id.* ¶¶ 13-17).

This is more than sufficient to provide a foundation for Mr. Burgos's testimony.

On this same issue of reliability, Plaintiff also seems to argue that Barnes & Noble had to come forward with a screenshot taken not from the clearly reliable quality assurance server that was in use by Barnes & Noble at the time of Plaintiff's purchase, but from the *actual live Website on February 3*.  (*See* Objs. at 12.)  But that is not the law—and Plaintiff supplies *no* authority at all suggesting that it is.  The Barnes & Noble-hosted Website that Plaintiff accessed on February 3 went off-line when the site transitioned to a third-party vendor several weeks before Plaintiff's Complaint.  (Burgos Decl. ¶¶ 5, 11-12.)  Therefore, Barnes & Noble is relying in this case on an accurate representation of the Website from its contemporaneous quality assurance server, which is similar—and, in fact, preferable—to evidence that other courts have relied on to compel claims to arbitration.  In *Selden v. Airbnb*, No. 16-cv-933, 2016 WL 6476934 (D.D.C. Nov. 1, 2016), for example, the court granted a motion to compel arbitration by relying on a declaration that attached not an image of the actual site at the relevant time but a "*rendering* of the initial sign-up page as it *would* have appeared" to the customer at that time, *id.* at *9 (emphases added), which rendering Airbnb built from the ground up using "archived Code".  (Suppl. Decl. of Kyle Miller in *Selden* [No. 16-cv-933

(D.D.C.), Dkt. #18] (Atkinson Decl., Ex. 2) ¶¶ 3-4).)  Mr. Burgos did not build anything here; he simply pulled images from an existing and reliable Barnes & Noble server.

Even though Judge Parker relied on *Selden* to reject Plaintiff's argument on this point (Report at 15 (citing *Selden* for the proposition that "courts have accepted similar evidence as sufficient to establish the existence of an agreement")), and even though *Selden* was the subject of multiple letters to the Court and lengthy discussion at oral argument (*see* Tr. at 19:17-20:14, 41:22-42:6, 88:4-12, 90:6-92:10, 104:9-105:3), Plaintiff's Objections do not even mention the case.  Plaintiff has no answer.  Nor is *Selden* an outlier; other courts too—consistent with the federal policy favoring arbitration, *see, e.g.*, *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295 (2d Cir. 2013), and with the common sense notion that companies do not save screenshots from every version of every webpage on every date just in case they are sued—have compelled arbitration on the basis of reliable representations of the relevant website.  *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988-89 (N.D. Cal. 2017); *Hook v. Intelius, Inc.*, No. 10-cv-239, 2011 WL 1196305, at *1-4 (M.D. Ga. Mar. 28, 2011).

Plaintiff's related suggestion concerning reliability, that the images attached to the Burgos Declaration prove only the Website's "content" and not its "design" (Objs. at 12-13), is wrong.  Mr. Burgos testified that the quality assurance server shows "the version of the checkout pages of the Website that Plaintiff *would have seen* when she completed her purchase on February 3, 2017 (or that any customer *would have seen* in the period between June 9, 2016 and February 22, 2017)".  (Burgos Decl. ¶ 12 (emphases added); *see* Report at 9-10.)  Of course the quality assurance server reflected both content and design; as Mr. Burgos testified, the whole idea behind "quality assurance" is to "review[] proposed changes to a website . . . and ensur[e] that the changes have been *implemented correctly* before they . . . become visible to the public".

(Burgos Decl. ¶ 3 (emphasis added).)

   *Second*, Plaintiff argues that the Burgos Declaration is inadmissible hearsay.  But, as Judge Parker correctly held (and Plaintiff does not dispute), the Burgos Declaration is "based on [Mr. Burgos's] personal knowledge" (Report at 16 n.5), which means that it is not hearsay. *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 321 n.33 (S.D.N.Y. 2016); *Lebowitz v. City of N.Y.*, No. 12-cv-8982, 2014 WL 772349, at *2 n.2 (S.D.N.Y. Feb. 25, 2014). Judge Parker also correctly found that, even if the Burgos Declaration were hearsay, "the screenshots were taken from data maintained in the regular course of B&N's business as part of its website quality assurance process" (Report at 16 n.5), and thus would qualify as admissible "business records" under Federal Rule of Evidence 803(6).  The quality assurance server was not—as Plaintiff suggests—"generated for the purpose of litigation" (Objs. at 13); as Mr. Burgos testified, "Barnes & Noble *continues to maintain* the quality assurance server for the version of the Website that existed on February 3, 2017" (Burgos Decl. ¶ 12 (emphasis added)).[6]

   ii. *Plaintiff's Timeliness Objection Fails.*

   Plaintiff is also wrong in arguing that Judge Parker should not have considered the Burgos Declaration.

   *First*, Plaintiff argues that Barnes & Noble impermissibly presented "new argument" on reply.  (Objs. at 7.)  That is wrong on both the facts and the law.  As a factual

---

[6] Without offering any legal support, Plaintiff makes the fallback argument that the "business records" exception does not apply here because the screenshots are not "original" writings under the best evidence rule. (Objs. at 13-14.)  But a screenshot is not a "writing, recording or photograph" under that rule, so no original is required.  *See Cordas*, 228 F. Supp. 3d at 989 (holding that "no original of the screenshots [displaying terms of use] is required because they are not a writing, recording or photograph", while observing that "[i]t is difficult, if not impossible, to conceive of how an 'original' screenshot would be presented").  Alternatively, if a screenshot were a "writing, recording or photograph", it would satisfy the best evidence rule as an "original" under Rule 1001(d), or an admissible "duplicate" under Rule 1001(e)—because it is "electronically stored information" about which no "genuine question" of authenticity has been raised.  *See also* Fed. R. Evid. 1003.  Indeed, although Plaintiff has submitted numerous screenshots to this Court, she has *never* provided the Court with *any* screenshot of the "Submit Order" page—or any *other* evidence that Mr. Burgos's image of that page is inauthentic.

matter, neither the Burgos Declaration nor any of Barnes & Noble's other reply papers presented any new *arguments*.  Barnes & Noble argued on reply, as it had argued in its opening brief, that Plaintiff should be compelled to arbitrate because (1) she assented to the arbitration clause in the Terms of Use, (2) the arbitration clause is valid and enforceable, and (3) the arbitration clause encompasses her claims.  Tellingly, Plaintiff is unable to point to a *single* new argument made by Defendant on reply; in fact, when she sought leave from the Court to file a sur-reply in October, Plaintiff argued that she was entitled to do so based on the fact that Barnes & Noble had submitted "new *evidence*" on reply [Dkt. #70 at 3; Dkt. #71].  As a legal matter, even if Barnes & Noble had presented new argument on reply—and it did not—courts in the Second Circuit also consider reply arguments where the other party is given a chance to respond to them via a sur-reply.  *See Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 144 (E.D.N.Y. 2012) (finding that plaintiff's reply "clearly raised new factual and legal issues", but because defendant submitted a sur-reply with supporting documentation, the court considered the reply); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 648 n.9 (S.D.N.Y. 2011) (considering new argument on reply because plaintiffs "requested and were granted permission to file a sur-reply").

　　　　*Second*, Plaintiff claims that the Burgos Declaration should have been disregarded because the failure to submit it with Barnes & Noble's opening brief was not "excusable neglect" under Rule 6(b) of the Federal Rules of Civil Procedure.  (Objs. at 5-7.)  But Rule 6(b)'s "excusable neglect" standard applies on its face to untimely filings, not new evidence submitted with timely filed replies.  Plaintiff cites to no case that applies Rule 6(b) in these circumstances.  And the only case Plaintiff cites that even references Rule 6(b)—*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008)—does not help Plaintiff because there, the court applied the "excusable neglect" standard to a request to file affidavits nearly *six months after*

briefing on a motion had been completed, and then *granted* that request.  *Id.* at 351-52.  Here, the Burgos Declaration was filed within the time allotted for Defendant's reply under this Court's scheduling order [Dkt. #14], and Defendant proactively offered Plaintiff a sur-reply so as to ensure no unfairness [Dkt. #65 at 4 n.5].  There is simply no basis to argue that Judge Parker erred in not applying the "excusable neglect" standard of Rule 6(b).[7]

   *Third*, Plaintiff argues—for the first time in her Objections—that she was prejudiced by the timing of the Burgos Declaration.  (Objs. at 8 n.2.)  But, as Judge Parker correctly found, Plaintiff's sur-reply cured any potential prejudice.  (Report at 13 n.3.)  Indeed, courts in this Circuit repeatedly have concluded that, where the party against whom reply evidence (or even argument) is presented files a sur-reply, such additional briefing cures any potential prejudice associated with the new evidence (or argument).  *Dixon*, 947 F. Supp. 2d at 396-97; *Brown Pub. Co. v. Brown*, No. 15-mc-0531, 2017 WL 455418, at *4-5 (E.D.N.Y. Feb. 1, 2017) ("Appellant suffered no prejudice because it had a chance to respond, and the Court will consider the Declarations.").  It is no surprise, then, that Plaintiff has not cited a *single* case in which a court disregarded new evidence (or argument) that was submitted on reply even though the opposing party never moved to strike that new evidence (or argument) but instead filed a sur-reply addressing it on the merits.[8]  Here, Plaintiff questioned whether or not to file a

---

[7] It would have been correct to consider the Burgos Declaration even under the "excusable neglect" standard: (1) there was no prejudice, particularly in light of Plaintiff's sur-reply; (2) the timing of the Burgos Declaration was reasonable in light of Barnes & Noble's careful investigation of the facts, spurred by Plaintiff's own evidence and arguments; and (3) Barnes & Noble acted in good faith, including in offering Plaintiff a sur-reply to avoid any prejudice.  *See Laroque*, 557 F. Supp. 2d at 350-51.  Indeed, the Burgos Declaration was appropriate rebuttal evidence.  *See Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 396-97 (S.D.N.Y. 2013) ("A district court enjoys broad discretion . . . to rely on evidence submitted with the reply papers."); *see also Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000).  Among other things, Plaintiff mentioned for the first time in opposition to the Motion that she held her phone sideways when she made her purchase [Dkt. #61 ¶ 6], and she relied for her "scrolling" argument on *Meyer*, a decision handed down weeks after Defendant's opening brief.

[8] *See Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, No. 15-cv-3526, 2016 WL 6083956, at *4 & n.3 (S.D.N.Y. Oct. 17, 2016) (rejecting as "unpersuasive" new arguments on reply, where no sur-reply was

sur-reply, and asked the Court for guidance on the question.  (Atkinson Decl., Ex. 1.)  Then, she

made a strategic decision—deciding *not* to request that the Burgos Declaration be stricken, but

instead seeking leave to file a sur-reply to address that Declaration on the merits.  Because she

took the opportunity to respond in full and on the merits to Barnes & Noble's reply—and

because she has never before argued that she suffered prejudice in any of her briefing or

argument to the Court—Plaintiff cannot now complain that Judge Parker should not have

considered the Burgos Declaration on timeliness grounds.  *Zhao*, 2011 WL 3610717, at *1.

\*    \*    \*

After Barnes & Noble presented evidence (in the form of the Burgos Declaration)

showing that Plaintiff had agreed to arbitrate her claims, the burden shifted to Plaintiff to come

forward with her own evidence that there was no agreement.  (*See* Report at 4, 11, 13); *Scone*

*Invs., L.P. v. Am. Third Market Corp.*, 992 F. Supp. 378, 381 (S.D.N.Y. 1998).  But, when she

responded to the Burgos Declaration, "Bernardino offer[ed] *no evidence whatsoever* to suggest

that the website on February 3, 2017 did not look the way Burgos has stated".  (Report at 13

(emphasis added).)  Assent should be found.

---

filed); *MPD Accessories B.V. v. Urban Outfitters, Inc.*, No. 12-cv-6501, 2013 WL 5761421, at *5 (S.D.N.Y. Oct. 24, 2013) (rejecting new arguments raised on reply, where opposing party "did not have an opportunity" to respond via sur-reply); *Aurora Loan Servs. Inc. v. Posner, Posner & Assocs., P.C.*, 513 F. Supp. 2d 18, 19-20 (S.D.N.Y. 2007) (rejecting new evidence on reply where opposing party moved to strike that evidence); *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, No. 07-cv-2352, 2007 WL 1098714, at *1 (S.D.N.Y. Apr. 12, 2007) (rejecting new evidence on reply where reply was "bereft of the kind of evidence necessary to prevail", and where no sur-reply was filed); *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (rejecting new evidence on reply where such evidence was "too extensive to remedy by merely allowing supplemental briefing"); *Tishcon Corp. v. Soundview Commc'ns, Inc.*, No. 04-cv-524, 2006 U.S. Dist. LEXIS 97309, at *27 (Feb. 14, 2006) (rejecting new evidence on reply where no sur-reply was filed); *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 386-87 (S.D.N.Y. 1998) (rejecting new arguments on reply where new arguments were "legally insufficient", and where no sur-reply was filed); *Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) (rejecting new, "complex and possibly dispositive argument" on reply because other party's "opportunity to respond ha[d] passed"); *Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993) (rejecting new factual assertions on reply where replying parties "saved the claim . . . as their best shot, with the obvious purpose of sandbagging their adversary", where the reply submissions were "entirely of a hearsay nature", and where no sur-reply was filed).

## II.    JUDGE PARKER CORRECTLY CONCLUDED THAT THE ARBITRATION CLAUSE IS NOT UNCONSCIONABLE.

As Judge Parker correctly held, Plaintiff has failed to show that, under governing New York law, the arbitration clause is either substantively or procedurally unconscionable—and it must be *both* for her to avoid it.  (Report at 23 (collecting cases).)

### A.    The Arbitration Agreement Is Not Substantively Unconscionable.

Plaintiff's principal argument is that Judge Parker failed to apply the "effective vindication" exception to arbitration.  (Objs. at 16-17.)  But that exception—an exceedingly narrow doctrine that balances vindication of statutory rights with the Federal Arbitration Act's clear mandate favoring arbitration—was never raised before Judge Parker.  The argument is waived.  *See Zhao*, 2011 WL 3610717, at *1.

Nevertheless, the argument fails, because Plaintiff has not met her "substantial" burden of showing that enforcement of the arbitration clause actually would preclude effective vindication of her claims.  *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 286-87 (4th Cir. 2007).  The substantial burden imposed on Plaintiff cannot be satisfied by mere "speculation about difficulties that *might* arise in arbitration".  *Id.* (emphasis in original).  But speculation is all that Plaintiff can muster; that is, all she ever argues is that her claim under the Video Privacy Protection Act "*may* require discovery from non-party Facebook".  (Objs. at 15-17 (emphasis added).)  But discovery is always something a plaintiff wants, and yet arbitration clauses—including the limited discovery available under them—must be "rigorously enforce[d] . . . according to their terms".  *Sutherland*, 726 F.3d at 296 (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 133 S. Ct. 2304, 2309 (2014)).  Furthermore, Plaintiff has offered no reason to believe that Barnes & Noble does not have sufficient records relevant to the issue in question—Defendant's *own* knowledge of what Facebook does with information.  *In re Hulu*

*Privacy Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015); *see also Eichenberger v. ESPN, Inc.*, 2017 WL 5762817, at *4, -- F.3d -- (9th Cir. Nov. 29, 2017).  Plaintiff is arguing for a rule that any claim that would be aided by third-party discovery cannot be compelled to arbitration.  That has no basis in law and would be directly contrary to the strong federal policy favoring arbitration.

Moreover, the only case Plaintiff cites in support of her effective vindication claim is *Italian Colors*.  But that case *enforced* an arbitration agreement and *rejected* an effective vindication argument even where the argument was that a plaintiff could not possibly pursue an antitrust claim in individual arbitration because of the costs associated with discovery in that case, in particular expert discovery.  133 S. Ct. at 2308, 2310-12.  The effective vindication exception cited (but rejected on the facts) in *Italian Colors* addresses circumstances in which a contract waives a plaintiff's ability to pursue a substantive federal claim.  *Id.* at 2310-11; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 1652 (1991).  Meanwhile, courts repeatedly have rejected arguments just like Plaintiff's—that the limited discovery available in arbitration prevents parties from pursuing statutory rights under the effective vindication exception.  *See Gilmer*, 500 U.S. at 31, 111 S. Ct. at 1654-55; *Promega Corp. v. Life Techs. Corp.*, 674 F.3d 1352, 1358 (Fed. Cir. 2012); *Cotton Yarn*, 505 F.3d at 286-87.

Plaintiff's remaining substantive unconscionability arguments—that the clause is "one sided", that it purportedly waives "constitutional rights", and that it allegedly violates certain discretionary AAA guidelines (Objs. at 14-15)—are conclusory and merely rehash arguments that were made before, and appropriately rejected by, Judge Parker.  (Report at 26 (collecting cases "uphold[ing] contracts with provisions allowing only one party to compel arbitration"); *id.* at 27 (collecting cases "uphold[ing] waivers of jury trials in the context of

enforcing arbitration provisions"); *id.* at 27-28 (collecting cases "reject[ing] arguments that a failure to follow discretionary guidelines renders an arbitration provision unconscionable").)

      B.     <u>The Arbitration Agreement Is Not Procedurally Unconscionable.</u>

      Plaintiff's three objections on procedural unconscionability also fail.

      *First*, Plaintiff claims that the arbitration clause's reference to certain AAA procedural guidelines "that no longer exist" renders the clause procedurally unconscionable. (Objs. at 18.)  But Plaintiff has never cited any legal authority suggesting that the incorporation of since-superseded guidelines renders an arbitration clause unconscionable.  *See Underwood v. Chapman Bell Road Imports, LLC*, No. 12-cv-1835, 2013 WL 1289528, at *2 (D. Ariz. Mar. 15, 2013) (rejecting argument that reference to arbitral rules that had since been superseded rendered an arbitration agreement unenforceable because the plaintiff failed to show any difference between the two sets of rules that was "so significant or unfavorable as to unfairly surprise or prejudice [p]laintiff").[9]  Plaintiff admits that this supposed defect does not "alone render the arbitration clause unconscionable, absent something more".  (Objs. at 19.)  But, as explained herein, there is nothing more.

      *Second*, Plaintiff complains that the arbitration clause is unconscionable because Plaintiff "was not given the opportunity to negotiate the[] terms and there was a clear disparity of bargaining power".  (Objs. at 18.)  But Plaintiff copies and pastes this "objection" right from her opposition brief.  (Pl.'s Opp'n at 18.)  And Judge Parker correctly rejected it, relying on the Second Circuit's binding decision in *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 122 (2d Cir. 2010).  (Report at 25.)  Plaintiff does not address *Ragone*, nor does she

---

     [9] Anyway, the broader objection under which Plaintiff makes this argument—that "Plaintiff was not presented with the entire contract at the time of purchase" (Objs. at 17)—was squarely rejected in *Meyer*. 868 F.3d at 78-79.

challenge the Report's finding that Plaintiff is a "relatively sophisticated internet consumer" who "is not lacking in experience and education".  (*Id.*)

*Third*, Plaintiff says that Judge Parker erred in not finding that the two foregoing points, considered together, amount to procedural unconscionability.  But, as shown above, Plaintiff's threadbare claims of procedural unconscionability find *no support* in the law—whether taken together or one at a time.  Zero plus zero still equals zero.[10]  And Plaintiff's citation to *Ingalls v. Spotify USA, Inc.*, No. 16-cv-3533, 2016 WL 6679561 (N.D. Cal. Nov. 16, 2016), in purported support of this argument is unavailing.  In *Spotify*, which applied California law, the court found that references in an arbitration clause to arbitral guidelines that had since been discontinued, taken together with the fact that the clause was offered on a take-it-or-leave-it basis, still "fell far short of [a] 'high degree of procedural unconscionability'".  *Id.* at *5-6.  Instead, the court found that the arbitration clause before it was unconscionable due to serious *substantive* defects not present here—(1) a significantly shortened statute of limitations period, (2) oppressive confidentiality provisions, and (3) unique, "more burdensome" procedures for rejecting unilateral modifications to the arbitration clause that did not apply to modification of other provisions in the relevant terms of use.  *Id.* at *6.

## CONCLUSION

Barnes & Noble respectfully requests that the Court adopt Judge Parker's Report in full, and enter an order compelling Plaintiff to arbitrate her claims and staying the present proceedings pending arbitration.

---

[10] And, in any event, Judge Parker *did* consider Plaintiff's arguments holistically, as both her Report and her questions at oral argument clearly show.  (*See* Report at 28 ("In sum, this Court finds that the arbitration provision in B&N's TOU is neither procedurally nor substantively unconscionable."); Tr. at 27:14-24.)

Dated:  December 18, 2017

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by

*Sandra C. Goldstein*

Sandra C. Goldstein
Kevin J. Orsini
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
(212) 474-1000
sgoldstein@cravath.com
korsini@cravath.com

*Attorneys for Defendant Barnes & Noble*
*Booksellers, Inc.*